# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HALIK WILLIAMS (K64712), ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> VICTOR GALLOWAY, ) <br> ) <br> Respondent. ) | Case No. 17-cv-1466 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Petitioner Halik Williams, a prisoner incarcerated at the Danville Correctional Center, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his 2002 murder conviction from the Circuit Court of Cook County. Petitioner claims that: (1) the evidence was insufficient to convict him of first degree murder on the theory of accountability; (2) his appellate counsel was ineffective for failing to argue that none of the persons for whom he was accountable had the requisite mental state to commit murder; and (3) new evidence demonstrates that he is actually innocent of first degree murder. The Court denies the petition and declines to issue a certificate of appealability. Civil case terminated.

## I. Background

The following facts are drawn from the state court record, which Respondent has submitted in accordance with Rule 5(c) of the Rules Governing Section 2254 Cases. See [17]. The state court findings of fact are presumed correct, and Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 n.8 (2015) (citing 28 U.S.C. § 2254(e)(1)).

During an altercation between two rival gangs on an elevated train platform ("L") in Chicago, Anthony King ("King") fell onto the third rail of the train tracks and was electrocuted. See [17-1] at 1. Petitioner and two of his fellow gang members, Warren Hardy ("Hardy") and David Sapp ("Sapp"), were charged with King's murder in the Circuit Court of Cook County. *Id*.

The following evidence was presented by the State at the co-defendants' simultaneous but severed bench trials. [17-1] at 1.[1] Around 1:40 a.m. on September 5, 1999, King was with fellow Vice Lords Jonathan Lejman ("Lejman," a/k/a "White C"), Dennis Myles ("Myles"), and Dwayne Johnson ("Johnson"). Lejman testified that he, King, Myles, and Johnson were celebrating King's birthday and recent release from prison. In their search for a party, the group ended up at the Morse L stop and became aware that they were in Gangster Disciples' territory. Petitioner was driving around the area with two Gangster Disciple friends, Sapp and Lawrence Brooks ("Brooks"), and noticed the Vice Lords on the L platform. Petitioner told Brooks to park his car in front of the L station and wait. As Petitioner and Sapp exited the car, Petitioner was holding a wooden cane. Petitioner told Brooks that they were going up to the L tracks to "kick White C's and the other Vice Lords' ass." *Id*. at 2.

Once they reached the platform, Petitioner and Sapp approached King, Lejman, and Myles. Sapp stated that they were "hook killers," meaning Vice Lord killers. [17-1] at 2. Petitioner approached Lejman and asked if he was White C. Lejman responded that "White C was dead" and he was not looking for trouble. *Id*. As Petitioner, Sapp, and Lejman continued their verbal exchange, Petitioner began to fidget while holding his cane with both hands. Lejman stepped

---

[1] Several police officers testified concerning the investigation of King's death and statements given by Petitioner, Sapp, and Hardy. Occurrence witnesses Jonathan Lejman, Dennis Myles, and Jason Moody also testified. The evidence presented at trial did not present any significant factual disputes. See [17-1] at 2.

2

closer to Petitioner in an effort to "cut the space" between the two in case Petitioner decided to swing the cane. *Id*. at 3. Petitioner told Lejman to "back off," and he did. Petitioner lifted his cane again and once again Lejman stepped closer. Petitioner again told him to back off and Lejman backed away while stating, "baby, we ain't on that." *Id*. Petitioner replied, "I told your bitch ass I ain't your baby" and swung his cane at Lejman. *Id*. Lejman, trying to escape, ran south on the platform, with Petitioner pursuing him. *Id*.

While this was occurring, two other members of the Gangster Disciples, Hardy and Jason Moody ("Moody"), were walking up the steps to the L tracks. At first, Myles and King followed Lejman and Petitioner. Once they saw that Lejman was getting away, they turned and ran north on the platform. When they turned around, Hardy and Moody had reached the L platform. When Hardy emerged from the stairs, Sapp yelled, "grab him, get him." [17-1] at 3. In response, Hardy grabbed King and they both fell onto the L tracks and began fighting. According to Moody's testimony, Hardy struck and pushed King into the tracks. *Id*. According to Hardy, he kept pushing King down to avoid getting electrocuted himself. *Id*. According to Detective Steve Schorsch, King was electrocuted as a result of Hardy pushing him onto the track. *Id*.

Petitioner then walked over to King and struck him on the head five times with his cane. The cane broke in half after the fifth strike. Petitioner picked up the bottom part of the cane and yelled to Moody, "wait a minute, I'm going with you." [17-1] at 4. Petitioner, Sapp, and Hardy then left the L station. Later, the police found the broken handle of Petitioner's cane by King's head.

The medical examiner testified that King died as a result of electrocution. The medical examiner also noted a number of bruises and contusions on King's temporal area, forehead, nose,

3

lip, and left knee. The medical examiner stated that the two lacerations on King's head were inflicted prior or immediately prior to his death.

The trial judge found Petitioner accountable for the murder of King based on an accountability theory. [17-1] at 4; see also 720 ILCS 5/5-2(c). Petitioner was convicted of first degree murder and sentenced to 30 years in prison. [17-1] at 4.

Petitioner filed a direct appeal to the Illinois Appellate Court, which affirmed his conviction. Petitioner next filed a petition for leave to appeal to the Illinois Supreme Court ("PLA"), which was denied. Petitioner then filed a petition for postconviction relief in the Cook County Circuit Court. His petition was denied and he appealed to the Illinois Appellate Court. The Illinois Appellate Court affirmed the denial of post-conviction relief. See *People v. Williams*, 64 N.E.3d 1086 (Ill. App. 2016). Petitioner then filed this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254.

## II. Substantial Evidence

In his first two claims, Petitioner raises *Jackson* challenges to the sufficiency of the evidence supporting his conviction for first degree murder under an accountability theory. See *Jackson v. Virginia*, 443 U.S. 307, 319 (1987). "Fourteenth Amendment due process requires that the state must present sufficient evidence to prove each element of an alleged crime." *Maier v. Smith*, 912 F.3d 1064, 1074 (7th Cir. 2019). State law defines the substantive elements of the alleged crime, *id.*, while Supreme Court precedent sets the standard for determining whether the evidence is sufficient: "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

4

a reasonable doubt.'" *Saxon v. Lashbrook*, 873 F.3d 982, 987-88 (7th Cir. 2017) (quoting *Jackson*, 443 U.S. at 319).

"[H]abeas reviews of *Jackson* claims are subject to two levels of judicial deference creating a high bar: first, the state appellate court determines whether any rational trier of fact could have found the evidence sufficient; second, a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Saxon*, 873 F.3d at 988. "In other words, it must be 'something like lying well outside the boundaries of permissible differences of opinion.'" *Rodriguez v. Gossett*, 842 F.3d 531, 538 (7th Cir. 2016) (quoting *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003)). This standard is "difficult to meet" and "highly deferential." *Saxon*, 873 F.3d at 988 (internal quotation marks and citations omitted). The Court applies this standard to the Illinois Appellate Court's decision denying Petitioner's petition for postconviction relief, see *People v. Williams*, 64 N.E.3d 1086 (Ill. App. 2016), because "that was the last state court to adjudicate [Petitioner]'s sufficiency of the evidence claim[s]." *Saxon*, 873 F.3d at 987; see also *Makiel v. Butler*, 782 F.3d 882, 896 (7th Cir. 2015) ("The operative decision under review is that of the last state court to address a given claim on the merits.").

Petitioner was convicted of first degree murder under an accountability theory. Under Illinois law, a person commits first degree murder when, in performing the acts which cause a victim's death, "he knows that such acts create a strong probability of death or great bodily harm" to the victim. 720 ILCS 5/9–1(a)(2). A person is legally accountable for the conduct of another when "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense." 720 ILCS 5/5-2(c). "A defendant may be deemed

5

accountable for acts performed by another if defendant shared the criminal intent of the principal, or if there was a common criminal plan or purpose." *People v. Taylor*, 646 N.E.2d 567, 571 (Ill. 1995). A common criminal plan or purpose "can be inferred from the circumstances surrounding the perpetration of the unlawful conduct," including "[p]roof that defendant was present during the perpetration of the offense, that he maintained a close affiliation with his companions after the commission of the crime, and that he failed to report the crime," as well as "[d]efendant's flight from the scene" and "[e]vidence that defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design." *Id*.

**Claim One: Whether the Evidence Presented at Trial Was Sufficient to Prove Petitioner Guilty of First Degree Murder Beyond a Reasonable Doubt**

In his first substantial evidence challenge, Petitioner argues that he should not have been convicted because "there exists absolutely no evidence that the Petitioner conspired with his codefendants with the intention to push the victim [King] to the third rail." [20] at 8. The Illinois Appellate Court rejected this argument based on both the law and the facts. As to the law, the court held that "the State was not required to prove that defendant and codefendants shared the same intent with regard to the charged offense (*i.e*., first degree murder)," but rather "the State needed only to prove that defendant had the intent to promote or facilitate a crime." *Williams*, 64 N.E.3d at 1097. The court explained that "[b]y attaching himself to a group bent on an illegal action"—fighting with rival gang members on the CTA platform—Petitioner "became accountable for all the crimes of his companions, including those of codefendant Hardy," who pushed King onto the third rail. *Id*. at 1098.

To the extent that Petitioner believes that the Appellate Court "misunderstood the substantive requirements of state law" by not requiring proof that Petitioner himself intended for

6

King to be pushed to the third rail, his claim "does not present a true *Jackson* challenge and is not cognizable under § 2254." *Crockett v. Butler*, 807 F.3d 160, 168 (7th Cir. 2015) (holding that petitioner's sufficiency-of-the-evidence challenge to his first degree murder conviction was really a claim that the Illinois Appellate Court misinterpreted Illinois' accountability statute in holding that the theory of accountability required only that the evidence prove petitioner had specific intent to promote or facilitate a crime, which need not have been the actual crime for which he was charged, and thus petitioner's challenge was beyond the reach of § 2254).

Petitioner's challenge to the Illinois Appellate Court's factual determination is not persuasive, either. Petitioner claims that the court erroneously relied on his mere presence at the scene of King's death to hold Petitioner accountable for first degree murder. But this was far from the only fact on which the Appellate Court relied to determine that Petitioner and his co-defendants shared a common criminal design. Instead, the Appellate Court explained:

> The evidence at trial established, through the testimony of Moody, Lejman, and Myles, as well as Schorsch's testimony regarding [Petitioner]'s statement, that when [Petitioner] noticed a group of rival gang members on the platform, he told Brooks to stop the car and then went to the platform to confront them. Once on the platform, and after Sapp announced they were "hook killers," [Petitioner] approached Lejman and swung a cane at Lejman. In the ensuing chaos, codefendant Hardy grabbed the victim [King], and both men fell onto the train tracks. Specifically, Moody testified that codefendant Hardy and the victim fought on the train tracks, and [Petitioner] stated that codefendant Hardy pushed the victim onto the tracks causing the victim to be "electrified."

*Williams*, 64 N.E.3d at 1096.

The Appellate Court's determination that this evidence was sufficient to find Petitioner guilty beyond a reasonable doubt of first degree murder under an accountability theory was not objectively unreasonable. See *Saxon*, 873 F.3d at 988. The Appellate Court identified not only evidence that Petitioner was "present during the perpetration of the offense," but also evidence

7

that he "voluntarily attached himself to a group bent on illegal acts." *Taylor*, 646 N.E.2d at 571. Petitioner first initiated the contact with the Vice Lords, telling Brooks that he and Sapp were going up to the L tracks to "kick White C's and the other Vice Lords' ass," [17-1] at 2; Petitioner stood by while his fellow gang member Sapp announced to their rivals that they were "hook killers," *id*.; and Petitioner then swung his cane at and chased Lejman. In addition, the evidence presented at trial showed that Petitioner struck King in the head with a cane multiple times after he was electrocuted, and then "failed to report the crime" and "fl[ed] from the scene," which are additional circumstances from which is can be inferred that Petitioner shared a common criminal plan with his co-defendants. *Taylor*, 646 N.E.2d at 571; see also *People v. Cooks*, 625 N.E.2d 365, 369 (Ill. App. 1993) ("Although by statute accountability requires that the accused assist prior to or during the commission of the crime, such assistance may be inferred from activities occurring after the offense.").

For these reasons, Claim One is denied.[2]

---

[2] Petitioner also argues in his reply brief that the evidence was insufficient to convict him because Lejman testified that neither he nor King were in gangs any longer, undermining the alleged motive behind King's killing. [20] at 6. Assuming this argument was not procedurally defaulted, it nonetheless lacks merit. Taking as true that Lejman and King were not current gang members (a proposition that is contrary to the Illinois courts' findings of fact), the evidence at trial shows that Petitioner and his co-defendants *thought* Lejman and King were Vice Lords when they went up to the train platform to start a confrontation. See *Williams*, 64 N.E.3d at 1090, ¶ 4 (Moody's testimony that he heard co-defendant Hardy say some "hooks," *i.e.,* Vice Lords gang members, were on the train platform); ¶ 7 (Lejman's testimony that Sapp told him that he and co-defendants were "hook killers"); ¶ 10 (Detective Steve Schorsh's testimony that Petitioner told him that, once on the train platform, co-defendant Sapp said he and co-defendants were "Vice Lord killers, hook killers"). Therefore, the evidence shows that the co-defendants had a motive to begin a fight with Lejman and King even if the men were no longer in a gang.

**Claim Two: Whether Petitioner's Direct Appeal Counsel Was Ineffective for Failing to Challenge the Sufficiency of the Evidence to Support His Conviction "Where the Trial Judge Found that Neither Petitioner Nor Any of His Codefendants' Had the Requisite Mental State to Commit First Degree Murder," [3] at 14.**

Petitioner's second claim also raises a sufficiency of the evidence challenge. This claim focuses not on Petitioner's own intent, but on the intent of his co-defendants. Petitioner asserts that the trial judge "made it absolutely clear that [he] believed the evidence showed that the defendants merely intended to commit a battery" and "failed to identify what action [he] believed was the actual first degree murder in this case." [20] at 12. Petitioner contends that without sufficient proof that either of his co-defendants acted with the requisite mental state to commit first-degree murder, it was error to convict him of first-degree murder based on the theory of accountability.

The State contends that this argument has been procedurally defaulted because Petitioner did not raise it on direct appeal. Generally, "[t]o avoid procedural default, a habeas petitioner must 'fairly present' a claim to each level of the state courts," placing both "the operative facts and controlling law" before them. *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). However, where the "last state court to consider the issue does not rely on a procedural bar, but instead addresses it on the merits, there is no procedural default." *Id*. at 483 (citing *Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009)); see also *Kirkman v. Calloway*, 2019 WL 1572492, at *8 (N.D. Ill. Apr. 11, 2019); *Robinson v. Atchison*, 2012 WL 669049, at *6 (N.D. Ill. Feb. 27, 2012).

Here, the last state court to consider Petitioner's argument was the Illinois Appellate Court in post-conviction proceedings. The Appellate Court did not rely on a procedural bar in rejecting Petitioner's argument that "appellate counsel was ineffective for failing to challenge the sufficiency of the evidence based upon codefendants' lack of the requisite mental state to commit

first degree murder." *Williams*, 64 N.E.3d at 1095; see also *id.* at 1094-95, ¶¶ 32, 34 (summarizing Petitioner's argument). Instead, the court addressed the claim on the merits. See *id.* at 1098. Since Petitioner's argument is not procedurally barred, the Court need not examine whether the alleged failure of Petitioner's direct appeal counsel to raise the issue constituted ineffective assistance of counsel. See generally *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010) (explaining that an ineffective assistance of counsel claim can constitute cause and prejudice to excuse a procedural default).

Addressing the merits of Petitioner's claim, the Illinois Appellate Court held that "this court cannot say that no rational trier of fact could have found defendant guilty of first degree murder pursuant to the common design rule when the evidence at trial established that defendant and codefendants were on the train platform (at defendant's behest according to his statement to the police) to confront the victim; that, Hardy, one of the defendant's companions, pushed the victim on the train tracks; and that Hardy's act created a strong probability of death or great bodily harm to the victim." *Williams*, 64 N.E.3d at 1098.

The Appellate Court's decision is well within "the boundaries of permissible differences of opinion" about how the evidence at trial should be interpreted, and therefore the decision is not objectively unreasonable. *Rodriguez*, 842 F.3d at 538. There is ample evidence from which a reasonable juror could conclude that Hardy intentionally pushed King onto the train tracks despite knowing the grave risk of the electrified third rail. According to Moody's testimony, while Hardy and King were fighting on the tracks, Hardy punched King while King was trying to push Hardy away. *Williams*, 64 N.E.3d at 1089, ¶ 5. According to Detective Schorsch's testimony about what Petitioner told him, Hardy grabbed one of the Vice Lords, "Hardy and the man fell onto the train

tracks," and "Hardy pushed the other man onto the tracks," causing him to be "electrified." *Id.* at 1090, ¶ 10. And "[a]ccording to Hardy, he kept pushing [King] down to keep himself from getting electrocuted." [17-1] at 3. All of this is evidence that Hardy knew that pushing King onto the train tracks "create[d] a strong probability of death or great bodily harm." 720 ILCS 5/9–1(a)(2).

Petitioner challenges this conclusion by pointing to statements made by the trial judge after the conclusion of the bench trial. In particular, Petitioner emphasizes that at Sapp's sentencing, the trial judge stated: "I do not believe that you or your Co-defendants intended to kill Mr. King, but the conduct that you engaged yourself in was fraught with that possibility and ignored only by you, as if it were—you were oblivious to the consequences of your conduct." [3] at 17. According to Petitioner, these comments "do not describe any person knowingly committing an act that created a strong probability of death or great bodily harm," but rather, "the Court found that death was a 'possibility' that was evoked by the co-defendants' actions." *Id.*

The trial judge's statement does not affect this Court's analysis. As an initial matter, Petitioner has not cited and the Court has not found any cases suggesting that the trial judge's comments at his co-defendant's sentencing are entitled to any legal weight. This Court's task is to review the Illinois Appellate Court's decision to determine whether it was objectively unreasonable, while it was the Appellate Court's job was to decide whether any rational trier of fact could have found the evidence sufficient to convict Petitioner. *Saxon*, 873 F.3d at 988. Assuming for the sake of argument that it has any relevance, the trial judge's statement is not inconsistent with a conclusion that Hardy, at least, had the *mens rea* for first degree murder. Intent to *kill* is not required for conviction under 720 ILCS 5/9-1(a)(2). Instead, the defendant need only "know[] that [his] acts create a strong probability of death or great bodily harm" to his victim. *Id.*

11

According to the trial court, the co-defendants engaged in conduct that "was fraught"—*i.e.*, "full of"[3]—the possibility that King would be killed, but "ignored" that risk. As the Court reads it, this is just another way of saying that the co-defendants engaged in conduct that they knew created a strong probability of death or great bodily harm, as the murder statute requires.

For these reasons, Claim Two is denied.

## III.     Actual Innocence

**Claim Three: Whether Petitioner Made A Substantial Showing of Actual Innocence Based On Newly Discovered Evidence**

In his third claim, Petitioner argues that he has made a substantial showing of actual innocence by presenting newly discovered evidence—an affidavit from co-defendant Sapp concerning how King ended up on the train tracks—that has the potential to exonerate him. According to Sapp's affidavit, which was created after Petitioner's conviction, King either fell or jumped down onto the tracks after Myles (King's fellow gang member) crossed in front of him and jumped down onto the tracks, catching King off guard and causing him to lose his balance. See *Williams*, 64 N.E.3d at 1092. Based on that affidavit, Petitioner argues that the person responsible for King's death—Myles—was not someone with whom he shared a "common design" and therefore he is not guilty of first degree murder based on the accountability statute. In response, the State argues that Petitioner's claim of actual innocence is not cognizable in habeas corpus.

"The Supreme Court has flagged the possibility that actual innocence might be enough to justify collateral relief in a *capital* case on the theory that the execution of one who is actually

---

[3] Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/fraught (last visited Nov. 21, 2019).

innocent violates the Eighth Amendment." *Perrone v. United States*, 889 F.3d 898, 903 (7th Cir. 2018) (emphasis added). "Apart from that potential exception, however, the Court's 'habeas jurisprudence makes clear that a claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); see also *Arnold v. Dittmann*, 901 F.3d 830, 837 (7th Cir. 2018) ("To date, an assertion of actual innocence based on evidence post-dating a conviction has not been held to present a viable claim of constitutional error. The Court in *Herrera* assumed without deciding that the Eighth Amendment precludes the execution of a person who has demonstrated his actual innocence. But neither the Supreme Court nor this court has yet indicated that an actual innocence claim could, standing alone, support the issuance of a writ in a non-capital case."); *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015) ("The Supreme Court has not recognized a petitioner's right to habeas relief based on a stand-alone claim of actual innocence.").

As in *Perrone*, "[t]his is a problem" for Petitioner, because he "does not ask us to determine that he is actually innocent so that we can consider a claim of constitutional error; rather, his innocence of [first degree murder] is the error he asks us to correct." *Perrone*, 889 F.3d at 903. To be clear, Petitioner's substantial evidence claims are "not the constitutional claim[s] for which 'actual innocence' serves as the gateway, because th[ose] claim[s] [are] not procedurally defaulted." *Id*. at 903 n.1. Therefore, the Court agrees with the State that Petitioner's Claim Three is not cognizable in this § 2254 *habeas* action. Claim Three is denied.

IV. **Certificate of Appealability**

In view of the forgoing analysis, the Court declines to issue a certificate of appealability

13

under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner cannot make a substantial showing of the denial of a constitutional right, or put forward a convincing argument that reasonable jurists would debate the Court's resolution of this case. *Resendez v. Knight*, 653 F.3d 445, 446-47 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). To the extent that the Supreme Court and the Seventh Circuit have not foreclosed the possibility that a standalone actual innocence claim might someday be recognized in a non-capital case, see *Tabb v. Christianson*, 855 F.3d 757, 764 (7th Cir. 2017), Petitioner has not made a strong factual showing for "breaking new constitutional ground" in this case, *id.*, for the reasons explained by the Illinois Appellate Court, see *Williams*, 64 N.E.3d at 1098.

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. See Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. See Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. See Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. See Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. See Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. See Fed. R. Civ. P. 6(b)(2). A Rule 60(b)

motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. See Fed. R. App. P. 4(a)(4)(A)(vi).

## V. Conclusion

For these reasons, the Court denies Petitioner's petition for habeas relief and declines to issue a certificate of appealability.

Dated: December 26, 2019

_____
Robert M. Dow, Jr.
United States District Judge